993 So.2d 64 (2008)
Kurt S. BROWNING, in his official capacity as Florida Secretary of State, Appellant,
v.
Regina YOUNG, Appellee.
No. 1D08-3748.
District Court of Appeal of Florida, First District.
September 5, 2008.
Rehearing Denied October 29, 2008.
Bill McCollum, Attorney General, Ashley E. Davis, Assistant Attorney General, and Russell S. Kent, Special Counsel for Litigation, Office of the Attorney General, Tallahassee, for Appellant.
*65 John S. Mills of Mills Creed & Gowdy, P.A., Jacksonville; Clyde M. Collins, Jr., and Max Story, Jacksonville, for Appellee.
PADOVANO, J.
Regina Young seeks election to the Florida House of Representatives. She filed her qualifying papers with the Secretary of State within the time allowed by law, but there was an error on the Commission on Ethics Full and Public Disclosure of Financial Interest Form, more commonly known as the CE-6 Form. The notary public who verified Young's signature on the form neglected to write the word "Duval" in the blank for the county in which the form was signed. Instead, the notary wrote the word "Florida."
Based on this defect, the Secretary of State determined that Young was not qualified to run for the House of Representatives. He declined to place her name on the ballot, and she then sought relief in the courts by mandamus. The trial judge held a hearing on the petition and concluded that Young had substantially complied with the Florida election laws. Accordingly, the judge granted the petition and directed the Secretary to place Young's name on the ballot. The Secretary seeks review in this court.
The order is one that is reviewable by appeal. Mandamus is now frequently used in the circuit court as an appellate remedy to review judicial or quasi-judicial actions of lower tribunals. When that is the case, further review in the district court of appeal is by certiorari and not by a plenary appeal. See Sheley v. Fla. Parole Comm'n, 703 So.2d 1202 (Fla. 1st DCA 1997), approved, 720 So.2d 216 (Fla.1998). However, mandamus was employed here in the way it was originally intended, as a civil remedy to compel a public official to discharge a ministerial duty. The petitioner was not seeking appellate review of a judicial or quasi-judicial decision. Because the final order granting mandamus in this case is an order in an original civil proceeding in the circuit court, we review the order by appeal. See Weeks v. Golden, 764 So.2d 633 (Fla. 1st DCA 2000).
The question presented to the trial court was whether Ms. Young's papers were in substantial compliance with the Florida election laws. This was not a question that could be resolved in the trial court by the exercise of discretion. Nor does the answer turn on the facts. Everything the trial court needed to know about the alleged error is shown on the face of the form itself. The issue is whether Ms. Young's qualifying papers meet the requirements of election laws, despite the alleged deficiency identified by the Secretary. Because this is an issue of law, we review the trial court's decision by the de novo standard.
We begin with the text of the statute. Section 99.061(5), Florida Statutes provides that "each candidate for a constitutional office shall file a full and public disclosure of financial interests," pursuant to Article II, section 8, of the Florida Constitution. This provision of the Constitution refers to a public disclosure of financial interests as a "sworn statement" but it does not specify a required method of attestation. No further direction is given on this point in the statute. Section 99.061(5) does not expressly require that a candidate's signature on the financial disclosure form must be notarized or that it must be verified in a particular way.
The financial disclosure form requires a notary acknowledgment, but that is not the only method of attestation the Commission on Ethics might have chosen to satisfy the "sworn statement" requirement in Article II, section 8. Section 92.525, Florida Statutes *66 provides that a document may be verified in two different ways: (1) by signing it before an officer such as a notary public, or (2) by including a self-verification form stating that the document is signed under the penalty of perjury. The full text of the form for the latter method of verification is set out in section 92.525(2). It does not require a statement of the county in which the document is signed.
We do not suggest that the Commission on Ethics should have chosen a different method of verification. The point is that the method selected is not the equivalent of a statutory requirement. The Secretary is bound by the statute, not the form. Likewise, we are bound by the statute. If we were to construe the statute to require that a financial disclosure form be verified by a particular method, we would be creating a requirement that was not set by the Legislature. This we may not do under the separation of powers provision in Article II, section 3, of the Florida Constitution. See Sloban v. Fla. Bd. of Pharmacy, 982 So.2d 26 (Fla. 1st DCA 2008).
It is noteworthy that section 99.021, Florida Statutes (2007), describes in detail the proper method of acknowledging a candidate's signature on the candidate oath form. An approved form of the candidate oath is incorporated into the text of the statute. This form includes the typical notary acknowledgment showing that it was signed and verified in Florida and it has a blank to write in the county in which it was signed. The Legislature could have incorporated a specific verification requirement such as this in section 99.061(5), for the execution of a financial disclosure form but did not.
The Secretary argues that the notary requirement need not be set out in the statute because it is an essential part of a form created by the Commission on Ethics at the direction of the Legislature. This argument unfolds in a number of steps. Section 99.061(5) requires a candidate to submit a financial disclosure form in order to qualify for office. Section 112.3144, Florida Statutes (2007), sets out in detail the required contents of a financial disclosure form. This statute does not state that the form must be notarized, but section 112.3147, Florida Statutes (2007), provides that the information a public official or candidate must disclose shall be on a form prescribed by the Florida Commission on Ethics. The final step is one not found in the statutes, but it is not in dispute. The form the Commission prepared at the direction of the Legislature does, in fact, require a notary public acknowledgment in the usual form with a space for the county.
We could read this sequence of statutes to mean that section 99.061(5) requires a notary acknowledgment on a financial disclosure form. However, if we hold that the failure to notarize a financial disclosure form disqualifies a candidate, we must be prepared to accept the proposition that the Florida Legislature meant to delegate to the Commission on Ethics not only the responsibility to prepare a form, but also the power to add a mandatory condition that must be met in order qualify for public office. See Sloban, 982 So.2d at 29-31 (discussing the separation of powers provision in the context of a delegation of authority). That proposition is not certain.
It is more likely, in our view, that the Legislature meant to provide some degree of uniformity by ensuring that the information required by section 112.3144 be provided in the same way by every candidate on the same form. Candidates are required to have the form notarized in the manner required by the Commission on Ethics, but it is not at all clear that this procedural element can be elevated to a *67 mandatory condition to be met in order to qualify for public office.
We have dealt so far with the question whether the failure to notarize a candidate's signature on a financial disclosure form can disqualify the candidate, but, of course, the case is much better for Ms. Young. She did have her signature notarized. There is no question that she signed the form, that she appeared in person before the notary public, that she was placed under oath, that she attested to the truth of the information in the form, or that the notary public was authorized to acknowledge her signature. Although the form was signed in Florida, the line for the applicable county was not filled out correctly, and as a result it is not known precisely where in Florida it was signed.
Despite this defect in the verification, the form provided all of the financial information that is required by section 112.3144. There is no contention here that Ms. Young failed to report some of her financial interests or that she otherwise failed to make a full and complete public disclosure of her finances. For this reason we conclude that the financial disclosure form she filed is in compliance with the statutory requirements and that the error in omitting the county does not disqualify her from public office.
The supreme court addressed a similar issue in State ex rel. Siegendorf v. Stone, 266 So.2d 345 (Fla.1972). In that case, the Secretary of State accepted qualifying papers submitted by a candidate for county judge, even though the oath form did not accurately describe the office for which the candidate was attempting to qualify. All that was written on the oath form was that the candidate was seeking election to office of "Judge (group) 3." It did not indicate that the candidate was qualifying for the office of county judge, nor did it specify the county. However, it was apparent from other information the candidate provided that he was seeking election to the office of county judge in Dade County.
On these facts, the supreme court held that the candidate had substantially complied with the election laws and that his name should remain on the ballot. As the court explained, "Literal and `total compliance' with statutory language which reaches hypersensitive levels and which strains the quality of justice is not required to fairly and substantially meet the statutory requirement to qualify as a candidate for public office." Siegendorf, 266 So.2d at 346.
The Secretary argues that mandamus is not the appropriate remedy to enforce a claim of substantial compliance. This argument is based in part on the observation in Siegendorf that the job of Secretary of State is one that necessarily involves the exercise of some judgment. However, this observation does not support an argument that the Secretary of State has discretion to reject filing papers that have some technical defect but nevertheless meet all of the requirements of the law. We have no doubt that the supreme court would have issued a writ of mandamus in Siegendorf if the error had been one that affected the legal sufficiency of the qualifying papers in that case. Substantial compliance, as the term is used in Siegendorf, is the functional equivalent of legal compliance.
We reversed an order granting a writ of mandamus in Sancho v. Joanos, 715 So.2d 382 (Fla. 1st DCA 1998), but that case is distinguishable. There, the issue was whether an elections supervisor has a duty to inform a candidate of any unmet requirements before the close of the qualifying period. We held that such a duty exists with respect to qualifying papers that are submitted for filing, but that the official accepting the papers has no *68 obligation to advise the candidate that he or she must take additional steps to meet all of the requirements. Some of the requirements (for example, whether the candidate currently holds an office he or she must resign) might not even be known to the elections official. The elections official is not required to act as legal advisor for a candidate. But it is an entirely different matter to argue that an elections official may exercise discretion to deny qualifying papers. If the qualifying papers submitted by a candidate comply with the election laws, the elections official has a duty to accept them, and mandamus will lie to enforce that duty.
For these reasons, we affirm the decision by the trial court. In the present case, as in Siegendorf, we conclude that the candidate complied with the election laws and that she is entitled to have her name on the ballot.
Affirmed.
VAN NORTWICK and THOMAS, JJ., concur.