# Third District Court of Appeal

## State of Florida

Opinion filed October 26, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2004
Lower Tribunal No. 16-20524
_____


**Jason Bloch,**
Appellant,

vs.

**Marcia del Rey, et al.,**
Appellees.


An Appeal from the Circuit Court for Miami-Dade County, Jerald Bagley, Judge.

Greenspoon Marder, and Joseph S. Geller (Fort Lauderdale); Benedict Kuehne; Kozyak, Tropin & Throckmorton and Thomas A. Tucker Ronzetti, for appellant.

Zumpano Castro and Robert H. Fernandez; Gunster and Angel A. Cortiñas and Jonathan H. Kaskel, for appellees.


Before SALTER, EMAS and FERNANDEZ, JJ.

EMAS, J.

**INTRODUCTION**

Jason Bloch appeals from an order granting Marcia Del Rey's motion to dismiss Bloch's claims for declaratory and injunctive relief, as well as an order granting judgment on the pleadings in favor of Stand Up to Violence and Jorge Alberto Balleste on Bloch's claim for injunctive relief. For the reasons that follow, we affirm in part and dismiss in part.

**FACTS**

Jason Bloch is an incumbent circuit court judge and was a retention candidate for the Circuit Court, Eleventh Judicial Circuit, Group 9 judicial election held on August 30, 2016.[1] Marcia Del Rey sought to challenge Bloch for that seat, and Del Rey filed the required paperwork and paid the required filing fee prior to the qualifying date of May 6, 2016. The Florida Division of Elections certified Del Rey as a qualified candidate for the Group 9 seat.

On August 10, 2016, more than three months after the qualifying date, only twenty days before election day, and only five days before the commencement of early voting in Miami-Dade County,[2] Bloch filed an action for declaratory and

_____

[1] Judicial campaigns are nonpartisan, and judicial elections are held on the date set for primary elections in partisan campaigns. See § 105.051(1)(b), Fla. Stat. (2016). Where more than two judicial candidates are running for the same office, and no candidate receives a majority of the votes cast, a runoff between the two candidates receiving the highest number of votes is held on the general election date. Id. In the instant case, there were only two candidates for this judicial seat, and thus the winner was determined in the primary election held on August 30, 2016.

[2] See http://www.miamidade.gov/releases/2016-08-12-elections-early-voting-

injunctive relief against Del Rey, asserting Del Rey was not constitutionally qualified to be a candidate for judicial office because she had "refused and failed to accurately provide the mandatory full and public disclosure" of financial interests by failing to accurately report her income from 2015 and had failed to disclose each source of her income. In addition, Bloch alleged that Del Rey made material misrepresentations and omissions in political advertisements and was the beneficiary of express advocacy by Stand Up to Violence, an electioneering communications organization, whose chairperson is Jorge Alberto Balleste. Stand Up to Violence and Balleste were also named as defendants, together with the Miami-Dade County Supervisor of Elections and Secretary of State.[3]

The three-count complaint sought (I) a declaration from the court that Del Rey was not constitutionally qualified to be a candidate for the office she was seeking; (II) an injunction removing Del Rey from the ballot for her failure to comply with the financial disclosure requirement and requiring the Secretary of State to declare Del Rey not qualified to be a candidate for circuit court judge and to notify voters of same, and to direct the Supervisor of Elections not to count any

---

monday.asp. (site last visited October 20, 2016) (announcing August 15-28, 2016 as the early-voting period for the primary election); §101.657(d), Fla. Stat. (2016) (authorizing county supervisors of elections to establish early-voting periods). In fact, Bloch's suit was filed after the Supervisor of Elections had already begun sending vote-by-mail ballots to those electors voting by mail, see § 101.6103, Fla. Stat. (2016).

[3] The Miami-Dade County Supervisor of Elections and the Secretary of State were named only in their representative capacities.

votes cast for her; and (III) an injunction prohibiting Stand Up to Violence and Balleste from continuing to expend funds by engaging in express advocacy in support of Del Rey.

On August 15, 2016, Bloch served the summons and complaint upon Del Rey, Stand Up to Violence and Balleste.[4] Del Rey filed a motion to dismiss Counts I (declaratory relief) and II (injunctive relief) for failure to state a cause of action, asserting she had met all constitutional eligibility requirements established by the Florida Constitution, and had complied with all statutory requirements to qualify as a judicial candidate. Del Rey further argued that the trial court was without authority to remove her from the ballot based solely on alleged irregularities in the qualifying papers she had filed, and further, that any such "irregularities" had been cured by her filing an amendment to her financial disclosure on August 18, 2016.

Stand Up to Violence and Balleste filed a motion for judgment on the pleadings as to Count III (injunctive relief), asserting that Stand Up to Violence was organized as a political committee, not an electioneering communications organization,[5] and therefore, it was allowed to engage in political advertising

---

[4] The record below evidenced that, by the time Bloch served the summons and complaint on the defendants, more than 90,000 Miami-Dade County electors had already cast vote-by-mail ballots or had voted in early voting.

[5] It was later established below that Stand Up to Violence is in fact a political committee, not an electioneering communications organization. Bloch subsequently amended his complaint to accurately reflect the status of this

4

containing express advocacy, and to make direct contributions to candidates. They also contended that the communications from Stand Up to Violence (attached as exhibits to the complaint) did not contain any express advocacy and that one of the exhibits (which does appear on its face to contain express advocacy) was not reviewed and approved prior to final publication. Finally, Stand Up to Violence asserted that the Florida Elections Commission, and not the court, has jurisdiction over alleged violations of chapter 106, Florida Statutes.

The trial court held a hearing on August 25 and 26, and thereafter, granted both motions. As to the motion to dismiss, the court determined that Bloch should have exhausted his administrative remedies with the Florida Commission on Ethics before seeking relief in the court and that he offered no valid reason for the extraordinary relief he sought in the court. The court further found that Del Ray had substantially complied with the financial disclosure requirements. As to the motion for judgment on the pleadings filed by Stand Up to Violence and Balleste, the court found that Bloch had failed to exhaust his administrative remedies against those parties by not filing a complaint with the Florida Elections Commission.

This appeal followed and this court has granted Bloch's motion for expedited consideration.[6]

---

organization.

[6] On August 30, Del Rey received the most votes and the Supervisor of Elections certified that Del Rey was elected to office. Del Rey's six-year term is scheduled to begin on January 3, 2017.

**ANALYSIS**

We review de novo the trial court's orders on Bloch's claims for injunctive relief against Del Rey, Stand Up to Violence and Balleste. See Walker v. Figarola, 59 So. 3d 188, 190 (Fla. 3d DCA 2011); Thompson v. Napotnik, 923 So. 2d 537 (Fla. 5th DCA 2006). As to the declaratory action, we ordinarily review an order dismissing such a claim under an abuse of discretion standard. See Acad. Express, LLC v. Broward Cty., 53 So. 3d 1188 (Fla. 4th DCA 2011); Basik Exports & Imports, Inc. v. Preferred Nat. Ins. Co., 911 So. 2d 291 (Fla. 4th DCA 2005); Palumbo v. Moore, 777 So. 2d 1177 (Fla. 5th DCA 2001). However, to the extent that the dismissal is based upon a legal determination, our review is de novo. See, e.g., Angelo's Aggregate Materials, Ltd. v. Pasco Cnty., 118 So. 3d 971 (Fla. 2d DCA 2013).

We first address the order which entered judgment on the pleadings as to Count III in favor of Stand Up to Violence and Balleste. In that count, Bloch sought injunctive relief against Stand Up to Violence and Balleste, enjoining them from engaging in express advocacy in support of Del Rey and her campaign for circuit court judge. Given that the campaign has concluded and the election has already been held, the grounds upon which injunctive relief was sought are now moot. Even if we were to conclude that the trial court erred in granting judgment on the pleadings on Count III, a reversal and remand would be futile under these

6

circumstances. See Solares v. City of Miami, 23 So. 3d 227 (Fla. 3d DCA 2009); Rubin v. Addison Reserve Country Club, Inc., 126 So. 3d 1189 (Fla. 4th DCA 2012). We therefore decline to reach the merits of this claim and dismiss this portion of the appeal.[7]

Turning to the declaratory and injunctive relief claims filed by Bloch against Del Rey, we affirm the trial court's dismissal order and find Bloch's arguments are without merit, as Del Rey substantially complied with the statutory qualifying requirements set forth in section 105.031, Florida Statutes (2016).

As a preliminary matter, the issue before us involves compliance with the statutory requirements to qualify as a candidate for judicial office, rather than the constitutional requirements of eligibility to hold judicial office. See Burns v. Tondreau, 139 So. 3d 481 (Fla. 3d DCA 2014) (discussing the separate and distinct differences between a candidate's constitutional eligibility for office and the statutory requirements to qualify to run for office). See also Norman v. Ambler, 46 So. 3d 178 (Fla. 1st DCA 2010) (same). And while the qualifying paperwork at issue in this case ("Form 6, Full and Public Disclosure of Financial Interests") was

---

[7] We note that all parties have acknowledged that the Florida Elections Commission has the authority to investigate violations of Florida's campaign financing laws. See section 106.25, Fla. Stat. (2016). However, given our disposition of this claim, we need not and therefore do not reach the question of whether the FEC has exclusive jurisdiction under these circumstances, or whether Bloch was required to exhaust administrative remedies before seeking relief in circuit court.

created by the Florida Commission on Ethics to implement the provisions of Art. 2,

Section 8 of the Florida Constitution ("Ethics in Government")[8], the precise issue

_____

[8] Article II, Section 8 of the Florida Constitution, entitled "Ethics in government" provides in pertinent part:

> A public office is a public trust. The people shall have the right to secure and sustain that trust against abuse. To assure this right:
>
> (a) All elected constitutional officers and candidates for such offices and, as may be determined by law, other public officers, candidates, and employees shall file full and public disclosure of their financial interests.
>
> (b) All elected public officers and candidates for such offices shall file full and public disclosure of their campaign finances.
>
> (c) Any public officer or employee who breaches the public trust for private gain and any person or entity inducing such breach shall be liable to the state for all financial benefits obtained by such actions. The manner of recovery and additional damages may be provided by law.
> . . . .
>
> (f) There shall be an independent commission to conduct investigations and make public reports on all complaints concerning breach of public trust by public officers or employees not within the jurisdiction of the judicial qualifications commission.
> . . . .
>
> (1) Full and public disclosure of financial interests shall mean filing with the custodian of state records by July 1 of each year a sworn statement showing net worth and identifying each asset and liability in excess of $1,000 and its value together with one of the following:
>
> a. A copy of the person's most recent federal income tax return; or
>
> b. A sworn statement which identifies each separate source and amount of income which exceeds $1,000. The forms for such source

8

before us is whether Del Rey complied with the requirements as set forth in section 105.031, such that she qualified to run as a candidate for judicial office.

Section 105.031 establishes the statutory requirements and deadlines for an individual to qualify as a candidate for judicial office. The statute mandates, inter alia, payment of a qualifying fee (or submission of a petition), and execution and submission of certain oaths and documents. For our purposes, the relevant provisions are found in subsections (5)(a)5., (5)(b), and (6) which provide:

**105.031. Qualification; filing fee; candidate's oath; items required to be filed**

**(5) Items required to be filed.--**

(a) In order for a candidate for judicial office or the office of school board member to be qualified, the following items must be received by the filing officer by the end of the qualifying period:
. . . .
5. The full and public disclosure of financial interests required by s. 8, Art. II of the State Constitution or the statement of financial interests required by s. 112.3145, whichever is applicable. A public officer who has filed the full and public disclosure or statement of financial interests with the Commission on Ethics or the supervisor of elections prior to qualifying for office may file a copy of that disclosure at the time of qualifying.

(b) If the filing officer receives qualifying papers that do not include all items as required by paragraph (a) prior to the last day of qualifying, the filing officer shall make a reasonable effort to notify the candidate of the missing or incomplete items and shall inform the disclosure and the rules under which they are to be filed shall be prescribed by the independent commission established in subsection (f), and such rules shall include disclosure of secondary sources of income.

9

candidate that all required items must be received by the close of qualifying. A candidate's name as it is to appear on the ballot may not be changed after the end of qualifying.

(6) Notwithstanding the qualifying period prescribed in this section, a filing officer may accept and hold qualifying papers submitted not earlier than 14 days prior to the beginning of the qualifying period, to be processed and filed during the qualifying period.

Pursuant to the requirements of section 105.031, the Florida Commission on Ethics promulgated a form entitled "Form 6 Full and Public Disclosure of Financial Interests."[9]   It is this form which must be filled out, executed, sworn to and filed with the Division of Elections prior to the end of the qualifying period. There is no dispute that Del Rey in fact filled out and executed the Form 6, which was notarized and filed with the Division of Elections prior to the end of the qualifying period. Bloch contends, however, that the Form 6 filed by Del Rey was

---

[9] Fla. Admin. Code R. 34-8.001 (2016) provides:

The Commission on Ethics has the responsibility pursuant to Article II, Section 8(i)1., Florida Constitution, to prescribe forms for disclosure of income sources and amounts and the rules under which such forms are to be filed, which rules shall include disclosure of secondary sources of income. In addition, the Commission is authorized by Section 112.3147, F.S., to prescribe forms required for use in making the disclosures required by Article II, Section 8, Florida Constitution, and by Section 112.322(9), F.S., to adopt rules interpreting the disclosures established by Article II, Section 8, Florida Constitution. The forms for full and public disclosure shall be prescribed in accordance with the rules of this chapter and adopted by reference in Chapter 34-7, F.A.C.

materially incomplete, inaccurate or misleading, and that, as a result, Del Rey did not qualify as a candidate for judicial office. We find this argument without merit.

The Form 6 requires each candidate, inter alia, to:

a) List their net worth;

b) Describe each asset in excess of $1000 and state the value of each such asset;

c) Describe each liability in excess of $1000, listing the name and address of the creditor, and state the amount of each such liability;

d) Describe each primary source of income over $1000, listing the name and address of the source, and the amount of income received; and

e) Describe each secondary source of income, including the name of the business entity, the major source of that business' income, and the address and principal business activity of that source.

Upon our review of the Form 6 filed by Del Rey, we hold that the trial court properly determined that Del Rey substantially complied with the requirements of Form 6 and section 105.031. Del Rey's Form 6 set forth four sources of primary income and their individual amounts. Combined, these amounts totaled $210,500 in reported income.[10] Del Rey later revised her reported income by filing an

---

[10] Del Rey indicated in her Form 6 that she was reporting her 2015 income based upon her 2014 Federal tax return, and that she had received an extension for the filing of her 2015 return. In her Form 6X, Del Rey indicated that she was filing the amended form to include income reported in her 2015 return.

amended form, prescribed by the Commission on Ethics as Form 6X.[11]   The Form

6X reveals that the total amount of income from the same primary sources was

revised to reflect a total of $243,554, a net change of $33,054 in her reported

income from these sources.[12]

Notably, a review of Del Rey's Form 6X also reveals that Del Rey's net

worth, description and value of assets, description and amount of liabilities, and

secondary sources of income remained unchanged from that reported in her

original Form 6.[13]

_____

[11] See Fla. Admin. Code R. 34-8.009 (2016) (prescribing the use of Form 6X created by the Commission on Ethics, and further providing: "A person may amend his or her full and public disclosure of financial interests to add to or modify the information reported on the form as originally filed at any time after filing the disclosure form.")

[12] In addition, Del Rey's Form 6 had listed one of the primary sources of income as "Puerto Rico" with an address of "Caguas, P.R."  This was amended in the Form 6X to reflect the name of the source of income as "Lakeside Resorts," and listed a street address in Puerto Rico.

[13] Whether ironic or merely notable, Bloch also filed a Form 6X after the qualifying date of May 6, 2016, in which he amended the information contained in his original Form 6.  In his Form 6X, Bloch added one previously-unreported asset (valued at $35,000), one previously-unreported liability (valued at $6475.48), four previously-unreported primary sources of income and one previously-unreported secondary source of income (resulting in net reduction of $98,891 in reported income).  The combination of these amended items resulted in a change of $28,525 in the net worth previously reported by Bloch in his Form 6.

Bloch's arguments to the contrary notwithstanding, we conclude that the Form 6 was in substantial compliance with the qualifying requirements, and the revisions contained in the Form 6X do not establish that Del Rey failed to meet the requirements to qualify as a candidate for judicial office.[14] See Siegendorf v. Stone, 266 So. 2d 345 (Fla. 1972); Browning v. Young, 993 So. 2d 64 (Fla. 1st DCA 2008). Compare § 112.3144, Fla. Stat. (8)(a) (when a complaint is filed with the Commission on Ethics related to the filing of full and public disclosure of financial interests, and the alleged violation is only "an immaterial, inconsequential, or de minimis error or omission, the commission may not take any action on the complaint other than notifying the filer of the complaint. The filer must be given 30 days to file an amended full and public disclosure of financial interests correcting any errors.") Because we hold that Del Rey substantially complied with the requirements for full and public disclosure of financial interests, and that Del Rey properly qualified as a judicial candidate, we do not address the trial court's alternative basis for dismissal.[15]

_____

[14] Although Bloch's complaint alleged that Del Rey failed to report other assets in her Form 6, it was later established that these assets were in fact owned by Del Rey's mother, whose name is also Marcia Del Rey.

[15] Specifically, we do not reach the question of whether Bloch was required to exhaust administrative remedies before seeking declaratory and injunctive relief in circuit court. We note, however, that on August 30, 2016, Bloch filed a complaint with the Florida Commission on Ethics. See also Norman v. Ambler, 46 So. 3d 178, 181-82 n. 5 and accompanying text (Fla. 1st DCA 2010) (deciding appeal on other grounds but noting that, as a general proposition, "the doctrine of exhaustion

13

Affirmed in part and dismissed in part.

_____

of administrative remedies precludes judicial intervention where available administrative remedies can afford the relief a litigant seeks;" observing further, and in dicta: "The Commission on Ethics plainly had authority to act before the primary election and, at least once administrative remedies had been exhausted, the courts could have ordered the filing officer to take any action the law required.") See also Flo-Sun, Inc. v. Kirk, 783 So. 2d 1029 (Fla. 2001) (discussing the doctrine of primary agency jurisdiction which, under principles of deference, policy and comity, permits a trial court to refrain from exercising its jurisdiction over the issues presented until such time as the issue has been ruled upon by the agency).